**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| AYANA MCPHERSON o/b/o J.J., a minor,<br><br>Claimant,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>Defendant. | Civil Action No.: 2:14-cv-05000 (CCC)<br><br>**OPINION** |

**CECCHI, District Judge.**

**I.  INTRODUCTION**

Ayana McPherson, on behalf of Justin-Brendan T. Jackson ("Claimant"), seeks review of the final determination by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"), which denied Claimant's application for supplemental social security income ("SSI") payments under Title XVI of the Social Security Act ("SSA"). The decision of Administrative Law Judge Joel H. Friedman (the "ALJ"), dated March 18, 2014, determined that Claimant has not been under a disability within the meaning of the SSA, since the date of his application for benefits on May 9, 2012 (ECF No. 7-2). The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). This motion has been decided without oral argument pursuant to Federal Rule of Civil Procedure 78.[1] For the reasons set forth below, the ALJ's

---

[1] The Court considers any arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

1

decision is affirmed in part and vacated in part.

## II. FACTS AND PROCEDURAL HISTORY[2]

Claimant is an adolescent, whose family has been intermittently homeless (R: 14, 16).[3] On May 9, 2012, Claimant's mother filed an application on his behalf for SSI benefits (R: 73-46). The application alleged disability from Attention Deficit Hyperactivity Disorder ("ADHD") and affective/mood disorders (R: 83), as of August 1, 2005 (R: 147). In June 2011, Claimant's application was denied initially (R: 79) and upon reconsideration (R: 98). Claimant then requested a hearing for de novo review (R. 101), which was held before the ALJ on October 24, 2013 (R: 32-39) but ultimately adjourned to afford Claimant time to find counsel. A supplemental hearing was later held before the ALJ on January 9, 2014 with Claimant's counsel present (R: 40-72).

At the hearing, Claimant's mother testified that he has mood problems and displays aggressive behavior towards his sister and his classmates (R: 49-50). Claimant's mother also testified that the medications for ADHD and mood disorder (Concerta, Depakote, and Clonidine) sometimes help for periods of time and that he has been able to participate in high school sports such as football, basketball, and track and field (R: 50, 53). She reported that Claimant is not consistently compliant in taking his medications, however, partly because the medications produce negative side effects for him, including lethargy and nausea (R: 54, 56). Claimant also testified at the hearing and stated that, "I believe the medicine I take works and helps me." (R: 66).

On March 18, 2014, the ALJ issued a decision denying Claimant's SSI application (R: 8-27). Claimant sought review by the Appeals Council, which concluded there were no grounds for review, thereby rendering the ALJ's decision the final judgment of the Commissioner (R: 1-5, 6-

---

[2] Additional facts will be elucidated below.
[3] "R" refers to the certified record of the administrative proceedings.

2

7). Claimant now seeks the district court's review of the Commissioner's decision on the grounds that the ALJ's functional equivalence findings are not supported by substantial evidence. See Claimant's Br., ECF No. 10.

## III. LEGAL STANDARDS

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court must affirm the Commissioner's decision if substantial evidence supports the decision. 42 U.S.C. § 405(g); Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). Courts are not "permitted to re-weigh the evidence or impose their own factual determinations," but must give deference to the administrative findings. Chandler v. Comm'r Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011); see also 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Chandler, 667 F.3d at 359 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 4:08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. Cruz v. Comm'r of Soc. Sec., 244 Fed. App'x 475, 479 (3d Cir. 2007) (citing Hartranft v. Apfel,

181 F.3d 358, 360 (3d Cir. 1999)).

### B. Determining A Minor's Disability

The Social Security Administration examines three requirements in evaluating whether a minor is disabled, namely: (1) that the child is not working; (2) that the child has a "severe" impairment or combination of impairments; and (3) that the impairment or combination of impairments is of "Listing-level"[4] severity, meaning the impairment(s) met, medically equaled, or functionally equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (the "Listings"), and has lasted or is expected to last for a continuous period of twelve months. If the Commissioner answers each of the three requirements in the affirmative, the child is considered to be disabled. Ortiz v. Colvin, No. CV 14-4805, 2016 WL 164995, at *2 (D.N.J. Jan. 14, 2016).

With regard to the third requirement, to determine whether a child's impairment(s) are medically or functionally equal in severity to an impairment contained in the Listings, the Commissioner assesses all functional limitations caused by the child's impairment(s). See 20 C.F.R. § 416.926a(a). In assessing the child's functional limitations, the Commissioner evaluates six domains of functioning: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi); 20 C.F.R. § 416.926a(b)(1).

If the child has an "extreme" limitation in one of the six domains or a "marked" limitation in two of the six domains, the child's impairment is rendered functionally equivalent to a listed

---

[4] 20 C.F.R. § 404, Subpart P, Appendix 1.

impairment under the Commissioner's regulations. 20 C.F.R. § 416.926a(a). A limitation is "extreme" when the impairment "very seriously" interferes with the child's ability independently to initiate, sustain, or complete activities. 20 C.F.R § 416.926a(e)(3)(i). A limitation is "marked" when the impairment "seriously" interferes with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R § 416.926a(e)(2)(i). A marked limitation is more than moderate, but less than extreme. Id.

## II.   DISCUSSION

Claimant argues that the ALJ's functional equivalence findings are not supported by substantial evidence. In his decision, the ALJ determined that Claimant has the severe impairments of ADHD and Bipolar Disorder (R: 14) at Step Two. Next, at Step Three, the ALJ found that Claimant's impairment or combination of impairments do(es) not meet or functionally equal in severity an impairment in the Listings (R: 14-15). Specifically, the ALJ indicated that he had considered Listings 112.02, 112.04, and 112.11 (R: 14-15).[5]

In finding that Claimant's impairments do not functionally equal the severity of the impairments in the Listings, the ALJ reviewed Claimant's functional limitations in the six requisite categories. First, for acquiring and using information, the ALJ found that Claimant has a "less than marked limitation" in this area (R: 18). Second, the ALJ found that Claimant has a "marked limitation" in attending and completing tasks (R: 19). Third, the ALJ found that Claimant has a "less than marked limitation" in interacting and relating with others (R: 20). Fourth, the ALJ found that Claimant has no limitation moving about and manipulating objects (R: 21). Fifth, the ALJ found that Claimant has a "less than marked limitation" in caring for himself (R: 22). Sixth, the

---

[5] To the extent that Claimant appears to argue that the ALJ did not adequately combine and compare the effects of his impairments to find that they medically equaled the criteria in the Listings, this is a moot point, because the Court is remanding the ALJ's decision on other grounds.

ALJ found that Claimant has a "less than marked limitation" in his health and physical well-being (R: 23). Because the ALJ did not find that Claimant has a "marked limitation" in two of these six areas, he ultimately determined that Claimant is not disabled.

Claimant argues that he indeed suffers from at least two marked limitations and that the ALJ ignored and discredited testimonial evidence in support of these limitations without explanation. See Claimant's Br. at 13-17.

### A. Acquiring And Using Information

The ALJ indicated that his determination that Claimant has a "less than marked" limitation in this domain is based on Claimant's "full scale IQ of 91" and a Teacher Questionnaire (the "Questionnaire") indicating that Claimant "only had slight to moderate problems in this domain" (R: 18). The Questionnaire was completed by Claimant's middle school teacher and rates Claimant's functions on a scale of 1 to 5 (with "1" meaning "no problem" and "5" meaning a "very serious problem" compared to other children of the same age) (R: 175-76). In that Questionnaire, Claimant's teacher described him as having a "slight problem" in comprehending oral instructions and written material, understanding and participating in class discussions, expressing ideas in written form, and learning new material (R: 176), and an "obvious problem" with providing organized oral explanations and adequate descriptions, recalling and applying previously learned material, and applying problem-solving skills in class discussions (R: 176).

Claimant contends that the ALJ selectively quoted parts of the Questionnaire and disregarded the responses stating that Claimant had "serious" problems. See Claimant's Br. at 8. The Commissioner asserts that Plaintiff misstates the Questionnaire. See Defendant's Br., ECF No. 11, at 14-15. A review of that Questionnaire shows that Claimant was only rated as having a "serious problem" in the domain of "Attending and Completing Tasks", not "Acquiring and Using

6

Information" as relevant here.  Compare R: 177 with R: 176.  Thus, the ALJ adequately characterized and interpreted the Questionnaire.

Claimant also contends that the ALJ overlooked the fact that Claimant is in special education classes and reading two levels below his actual grade level.  See Claimant's Br. at 9.  The Commissioner asserts that the ALJ "specifically considered" these facts in an earlier part of the decision and that the ALJ was not required to repeat any "particular language" in evaluating Claimant's impairment in the Listings.  See Defendant's Br. at 15.  In Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), the Third Circuit clarified that an ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis."  Instead, the ALJ must only "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  Id.  Moreover, looking at the medical record which the ALJ also considered, Dr. Emanual Elfenbein, a state psychiatrist who examined Claimant, rated his overall impairments in this domain as "less than marked" and noted that there were "a few moderate, but no serious, domain element problems" at the time of the examination (R: 77).  Similarly, Dr. Pamela Foley, a state psychologist, agreed that the medical examination report did not indicate an additional learning difficulty (R: 88).  Accordingly, the ALJ's determination that Claimant's impairment in this domain is "less than marked" appears to be supported by substantial evidence.

### B. Attending And Completing Tasks

Next, Claimant contends that the ALJ should have determined that he has an "extreme" limitation in the area of attending and completing tasks, instead of the "marked" limitation the ALJ found.  The ALJ stated that he based his determination on the school records and consultative examinations.  Dr. Elfenbein rated Claimant's problems in this domain to be "marked" (R: 78).  Specifically, he found that Claimant's concentration was impaired and that Claimant had limited

persistence and slow place in cognitive problem-solving (R: 78). Dr. Foley indicated that new information from treating sources indicated a diagnosis of ADHD (R: 88). Nothing from the medical records seems to indicate that Claimant's impairment in this area very seriously interferes with his ability to initiate, sustain, or complete activities—which is required in order to classify an impairment as "extreme." Nor does Claimant point to medical evidence that the ALJ allegedly overlooked or disregarded. Accordingly, the ALJ's determination that Claimant's impairment in this domain is "marked" appears to be supported by substantial evidence.

### C. Interacting And Relating With Others

With regard to interacting and relating with others, the ALJ found that Claimant has a "less than marked limitation" in this domain (R: 20). Claimant disagrees with this characterization, arguing that it "conflates playing video games with social interaction and somehow deduces normal socializing abilities . . . ." Claimant's Br. at 13. The Commissioner asserts that "although [Claimant] had some difficulty socially, the ALJ reasonably concluded that he did not demonstrate marked limitations." Defendant's Br. at 17.

Dr. Elfenbein found that Claimant's impairments in this domain are "less than marked" (R: 78). However, he noted frequent and constant "serious/very serious" problems with attention seeking, anger expression, and respect towards adults (R: 78). Dr. Foley noted that Claimant has a history of inappropriate behaviors, testimonial evidence that Claimant had gotten worse since his family became homeless, and information from Claimant's treating physician indicating inconsistent attendance (R: 88). Additionally, the Questionnaire indicates that Claimant has a "very serious problem" with inappropriate attention seeking behavior, which occurs "hourly" (R: 178), a "serious problem" with inappropriate expressions of anger, occurring "daily" (R: 178), and a "serious problem" with respecting and obeying adults, on a "daily" basis (R: 178).

The ALJ does not indicate his reliance on this section of the Questionnaire. Instead, he points to Claimant's Individualized Education Plans which "describe him as an energetic youngster, who loves to play video games and outdoor sports." (R: 20). Additionally, although the ALJ mentioned Claimant's mother's testimony (R: 16), he does indicate that he considered the testimony that Claimant has been "very aggressive" over the past few years and has been physically aggressive toward his sister (R: 49-50). Claimant's mother further testified that he gets angry about having to take medicine and will start throwing things in response (R: 55). Apart from summarily stating that "the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons stated below" (R: 16), the ALJ does not indicate whether he relied on or discredited Claimant's mother's testimony and why.

Accordingly, because there appears to be countervailing medical and testimonial evidence that the ALJ either did not consider or did not explain why he chose to discredit, it appears that the ALJ's determination that Claimant's impairment in this domain is "less than marked" is not supported by substantial evidence.

### D. Moving About And Manipulation Objects

The ALJ found no limitation in the domain of moving about and manipulating objects, and Claimant does not appear to contest this determination.

### E. Caring For Oneself

Claimant argues that there was no explanation accompanying the ALJ's determination that Claimant has "less than marked" limitations in the domain of self-care. See Claimant's Br. at 13. The Court agrees. The ALJ stated that, "The Claimant has less than marked limitation in the ability to care for himself." (R: 22). He, however, did not explain how he reached this determination or on what evidence he relied. Although the Commissioner asserts that the ALJ did note treatment

9

records indicating hygiene problems in earlier parts of the decision, the ALJ's notations in this area appear to be accompanied by questions to himself (i.e. "claimant often missing the first period (possibly due to his homelessness?)") (R: 17). Accordingly, the ALJ's determination in this domain precludes meaningful judicial review.

### F. Health And Physical Well-being

Last, the ALJ determined that Claimant has "less than marked limitation[s] in health and physical well-being" (R: 23). The ALJ cited to treatment records from Claimant's physicians characterizing him as a healthy child and acknowledging that he is prescribed Concerta, Depakote, and Clonidine to treat his ADHD and Bipolar Disorder (R: 23). Claimant argues that the ALJ's determination that he suffers from "less than marked" impairments in health and physical well-being "ignores every physical and most mental diagnoses in the record." Claimant's Br. at 12. Moreover, Claimant argues that the ALJ did not consider his subjective complaints of pain and his mother's testimony about Claimant's physical well-being. Id. at 16-17. A review of Claimant's testimony at the supplemental hearing (R: 64-68) reveals that he did not appear to complain of pain. Claimant also testified, "I believe the medicine I take works and helps me." (R: 66). Accordingly, the ALJ's determination in this domain appears to be supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the ALJ's decision that Claimant was not disabled is affirmed in part and vacated in part. Specifically, the Court finds that the ALJ's determination that Claimant suffers from a "less than marked" impairment in the domain of interacting and relating with others is not supported by substantial evidence. Moreover, the ALJ's determination in the domain of

caring for oneself precludes meaningful judicial review. An appropriate order accompanies this Opinion.

DATED: Feby 26, 2016

                                                  **CLAIRE C. CECCHI, U.S.D.J.**